IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROSEMARIE O'CONNELL, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> HUMBERTO MARRERO RECIO, et al., <br><br> Defendants. | CIVIL NO.: 10-1971 (MEL) |

**OPINION AND ORDER**

Pending before the court are two motions for summary judgment, filed by defendants Jorge García Faneytt ("García") and Humberto Marrero Recio ("Marrero"), Dkt. No. 67, and by defendant Jesús Méndez Rodríguez ("Méndez"), Dkt. No. 68, all in their individual and official capacities, as well as plaintiffs Rosemarie O'Connell (plaintiff, or "O'Connell") and Alejandro Franco's ("Franco") response in opposition, Dkt. No. 80, defendants' joint reply, Dkt. No. 104, and plaintiffs' surreply, Dkt. No. 111. For the reasons set forth below, both motions for summary judgment are granted.

**I.    PROCEDURAL BACKGROUND**

On January 19, 2011, O'Connell and Franco filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging that O'Connell was constructively discharged from her job as Director of Human Resources and Labor Relations at the Puerto Rico Permits and Regulation Administration (hereinafter "ARPE," its Spanish acronym) and terminated on her first day as Director of Human Resources and Labor Relations at the Puerto Rico Public Building Authority (hereinafter "AEP," its Spanish acronym) due to intra-party political discrimination, violating her

rights under the First and Fourteenth Amendments of the United States Constitution. Dkt. No. 10. Plaintiffs also allege that Marrerro and García retaliated against O'Connell for her refusal to partake in their "illegal" actions, which violated her right to free speech under the First Amendment. Additionally, they assert claims under various Puerto Rico laws and constitutional provisions.

The complaint alleges that while Marrero was the Administrator of ARPE, he engaged in actions that forced O'Connell's constructive discharge because of their differences on two matters: the implementation of Puerto Rico Law Number 7 of March 9, 2009 ("Law 7") and their support of different candidates in a primary election for a seat in the Puerto Rico Senate. With respect to the latter matter, plaintiff alleges that she and Marrero are both members of the same political party, the New Progressive Party ("NPP"), but that they supported different candidates who were competing for a seat that had recently been vacated by an NPP senator. Plaintiff alleges that Marrero told her to vote for his preferred candidate, and that when she refused to do so, he retaliated against her by interacting with her in a belligerent and intimidating manner, threatening and instructing another employee threaten her, harassing and humiliating her, and ordering other employees to spy on her.

The complaint further asserts that Marrero's alleged actions made plaintiff's employment so unbearable that she tendered her resignation, stating that it would be effective December 15, 2009. Dkt. No. 10, ¶ 3.28. By then, defendant García had become the Administrator of ARPE, and he accepted her resignation. Id. at ¶ 3.28. However, because defendant Méndez then offered plaintiff the position of Human Resources and Labor relations Director at AEP, she changed the effective date of her resignation to October 31, 2009. Id. Plaintiff alleges Méndez told her that her appointment would be effective as of November 2, 2009. Id. at ¶ 3.29. However, when she

arrived for work on that date, she claims that Méndez told her she could not remain in the Human Resources Director position at AEP because Marrero had called him and said he "would have a problem with him" if he kept her in that position. Id. at ¶ 3.30. Plaintiff alleges that she suffered damages as a result of both alleged terminations. Franco, O'Connell's spouse, claims derivative damages from O'Connell's alleged injuries.

On February 2, 2011, all defendants filed a motion to dismiss, Dkt. No. 11, which was granted in part and denied in part. Dkt. No. 32. The court dismissed plaintiffs' claims under the First Amendment free speech clause, the Fourteenth Amendment, Article 1802 of the Puerto Rico Civil Code (31 L.P.R.A. § 5141), and Puerto Rico Laws 115 and 426. Dkt. No. 32. Therefore, the only federal claim that remains at summary judgment is plaintiffs' claim that O'Connell was discharged from both Human Resources Director positions due to impermissible political discrimination. Both motions for summary judgment request dismissal of this claim.

## II. SUMMARY OF UNCONTESTED MATERIAL FACTS

After applying Local Rule 56, the facts of the case for purpose of adjudicating the instant motions are set forth below.[1]

Plaintiff O'Connell began working as the Human Resources Director of ARPE on January 3, 2009. Dkt No. 69, ¶ 15; Dkt. No. 81, ¶ 15. On April 23, 2009, defendant Marrero was appointed Administrator of ARPE, where he remained until October 8, 2009, at which point co-defendant García assumed that position. Dkt. No. 69, ¶¶ 18, 22; Dkt. No. 81, ¶¶ 18, 22. Prior

---

[1] Local Rule 56 "structures the presentation of proof at summary judgment." Goya Foods, Inc. v. Orion Distributors, Inc., Civil No. Civil No. 10-1168 (BJM), 2012 WL 1069191, at * 1 (D.P.R. Mar. 29, 2012). It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González Toro, 520 F.3d 58, 63 (1st Cir. 2008), by requiring "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record." Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 6-7 (1st Cir. 2007). In accordance with Local Civil Rule 56(e), all proposed facts that are properly supported by record evidence and have not been successfully controverted or qualified by the opposing party have been deemed admitted.

to becoming ARPE Administrator, García was the Deputy Administrator of ARPE, a position he had held since July or August of 2009. Dkt. No. 69, ¶ 40; Dkt. No. 81, ¶ 40.

The position of Human Resources Director at ARPE is classified as a trust position under ARPE's Classification Plan for the Trust Service.[2] Dkt. No. 69, ¶ 4; Dkt. No. 81, ¶ 4; Dkt. No. 74. According to the official job description, the major duties and responsibilities of the Human Resources Director position at ARPE are as follows. The Director performs duties related to the direction, coordination, supervision and evaluation of the activities conducted in the various sections of the Human Resources office. Dkt. No. 69, ¶ 1; Dkt. No. 74-1, p.1. She is responsible for the application of and compliance with the laws and regulations related to the merit system and to personnel administration. Dkt. No. 69, ¶ 2; Dkt. No. 74-1, p. 1.[3] The Human Resources Director also prepares confidential reports and participates in the formulation and implementation of public policy regarding the administration of human resources in the agency. Dkt. No. 69, ¶ 3; Dkt. No, 74-1, p. 2. The employee in this position works under the direct supervision of ARPE's Administrator. Id.

The position of Human Resources Director of AEP is also classified as a trust position. Dkt. No. 74-1, p. 17. According to the official job description, the holder of this position is in charge of promulgating and implementing the agency's labor management policy, as well as planning, coordinating, and supervising the programs and activities developed at AEP's Human Resources Office. Dkt. No. 69, ¶ 11; Dkt. No. 18, ¶ 11. The duties of this position include

---

[2] In the public sector of Puerto Rico, there are two categories of public employees: career employees, who may be removed only for cause, and confidential or "trust" employees, who can be selected and removed at will. See 3 L.P.R.A. § 1465. Confidential employees are those that "substantially intervene or collaborate in the formulation of public policy, or those who directly advise or render direct services to the head of the agency." Id.
[3] The merit principle is contained in the Commonwealth Public Service Human Resources Law and ensures that personnel transactions such as selection, training, promotion, and retention are based on employee merit and skill and without discrimination for various impermissible reasons, including race, sex, religion or political beliefs. 3 L.P.R.A. § 1451a.

recommending employment actions and advising the AEP Executive Director on collective bargaining agreements, employee benefits, and policy to be implemented for achieving the optimal utilization of human resources. Dkt. No. 69, ¶ 12; Dkt. No. 81, ¶ 12.

On October 9, 2009, O'Connell tendered her resignation from her position as Human Resources Director of ARPE, stating that such resignation would be effective on December 15, 2009. Dkt. No. 69, ¶ 6; Dkt. No. 81, ¶ 6.[4] Shortly thereafter, O'Connell met with Méndez, the Executive Director of AEP, because he wanted to fill the position of Human Resources Director of AEP. Dkt. No. 69, ¶ 26; Dkt. No. 81, ¶ 26. On October 23, 2009, O'Connell tendered a second resignation effective October 31, 2009 because she planned to start working as Human Resources Director at AEP on November 2, 2009. Dkt. No. 69, ¶ 7; Dkt. No. 81, ¶ 7. On November 2, 2009, however, Méndez informed O'Connell that he had could not employ her as Human Resources Director. Dkt. No. 69, ¶ 56; Dkt. No. 81, ¶ 56.[5]

### III. STANDARD OF REVIEW

Summary judgment shall be granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008) (internal quotation marks and citations omitted)). The party moving for

---

[4] Plaintiff maintains that her resignation was not voluntary, but that she was forced to do so because her relationship with Marrero had made her "level of stress [ ] untenable." Dkt. No. 81, § 6.
[5] Defendants maintain that Méndez withdrew the employment offer before plaintiff's appointment took effect, Dkt. No. 69, ¶ 56, while plaintiff contends that her appointment had already taken effect and that Méndez fired her, Dkt. No. 81, ¶ 56.

summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id. In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). However, the court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citing Rossy v. Roche Prod., Inc., 880 F.2d 621, 624 (1st Cir. 1989)).

**IV.  ANALYSIS**

**A.  Section 1983 Political Discrimination**

Plaintiff brings her First Amendment claim under 42 U.S.C. § 1983, which "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom or usage of any State or Territory." Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 924 (1982) (internal citations and quotations omitted). Plaintiff sues for the alleged violation of her First Amendment right to freedom of association, which generally prohibits government officials from taking adverse employment action against a public employee due to the employee's political affiliation

or political beliefs. See, e.g., Elrod v. Burns, 427 U.S. 347, 373 (1976); Welch v. Ciampa, 542 F. 3d 927, 938 (1st Cir. 2008); see also Rodríguez Marín v. Rivera González, 438 F.3d 72, 75 (1st Cir. 2006) (collecting cases). There is an exception to this prohibition, however, "if the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Jiménez Fuentes v. Torres Gatzambide, 807 F.2d 236, 240 (1st Cir. 2008); see also O'Connor v. Steeves, 994 F.2d 905, 909 (1st Cir. 1993) ("A public employee may not be discharged, demoted, or disciplined for political activities or beliefs, unless political affiliation or belief is an appropriate job qualification for the particular position"). Defendants argue that plaintiff's claim falls within this exception because both Human Resources Director positions, at ARPE and at AEP, are positions for which political affiliation or belief is an appropriate requirement.

The First Circuit has established a two-part test for determining whether a position is one that a given political administration "relies upon for facilitating its programs and policies" such that it is "exempt from the prohibitions on firing someone for partisan political reasons." Collazo Rivera v. Torres Gatzambide, 812 F.2d 258, 260 (1st Cir. 1987) (citing Jiménez Fuentes, 807 F.2d at 239-42). The first inquiry looks at whether the functions of the employing agency or department "entail decision making on issues where there is room for political disagreement on goals or their implementation." Rosenberg v. City of Everett, 328 F.3d 12, 18 (1st Cir. 2003) (quoting Jiménez Fuentes, 807 F.2d at 241-42). The second question is "whether the particular responsibilities of the plaintiff's position . . . resemble those of 'a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement' for continued tenure." O'Connor, 994 F.2d at 910 (quoting Jiménez Fuentes, 807 F.2d at 242). In making the latter inquiry,

"courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." Jiménez Fuentes, 807 F.2d at 242-43 (citing Tomczak v. City of Chicago, 765 F.2d 633, 640 (7th Cir. 1985)).

Defendants argue that neither of plaintiff's Human Resources Director positions was protected from politically-motivated discharge because they are both trust positions that deal with policymaking. To support this contention, they point to two prior decisions of this court: one holding that the Human Resources Director of ARPE is a position for which political affiliation is an appropriate requirement, Velázquez v. Quiñones, 55 F. Supp. 2d 243 (D.P.R. 2007), and another stating that *any* Human Resources Director position in any field is a position unprotected by the First Amendment prohibition against political patronage dismissals, Huertas Morales v. Agosto Alicea, 278 F. Supp. 2d 164 (D.P.R. 2003). Because the official job duties of the ARPE Human Resources Director during plaintiff's tenure do not vary significantly from those described in Velázquez, there is no need to depart from that well-reasoned decision. As the duties of the Human Resources Director at AEP are very similar, the same result must also be reached as to that position. Moreover, an independent analysis of both Human Resources Director positions reveals that their inherent duties and privileges far more closely "resemble those of a "policymaking/confidential official than a clerk." Jiménez Fuentes, 807 F.2d at 244.

First, as the Velázquez court pointed out, the ARPE position easily passes the first prong as ARPE "is certainly an agency which is involved in the decision-making process on issues for which there is room for political disagreement," as it is "charged with the permit process for any construction project within Puerto Rico and thus plays a vital role in the implementation of any administration's urban planning policies." 550 F. Supp. 2d at 249. Similarly, the First Circuit has held that the AEP is an agency whose mission is one that "at least potentially . . . concerns

8

politically charged issues . . . ." Juarbe Angueira v. Arias, 831 F.2d 11, 15 (1st Cir. 1987) (holding that AEP administrator was entitled to qualified immunity on political discrimination claim). According to its enabling statute, the AEP makes or directs the preparation of plans and designs for all buildings and other physical facilities related to the provision of government services, including schools and hospitals. 22 L.P.R.A. § 903; see also Soto Padró v. Public Bldgs. Authority, 675 F.3d 1, 2 (1st Cir. 2012) (The AEP is a "public corporation whose central mission is preparing plans for and meeting the maintenance needs of physical facilities related to government services, and whose seven-member governing board includes four persons appointed by Puerto Rico's Governor."). It is also empowered to contract with private entities to, *inter alia*, own, lease, finance, maintain, improve, or repair such facilities. 22 L.P.R.A. § 903. Although the "room for political disagreement" on these functions may not be as immediately obvious as for those of ARPE, the First Circuit has pointed out that they do have the potential to implicate political concerns. "Where, how, and when the government will repair or reconstruct public buildings, which towns will have priorities, when and where money is to be spent, may well be a matter of considerable interest to government officials including political leaders." Juarbe Angueira, 831 F.2d at 15.

Moreover, the specific functions of the Human Resources Department at AEP, as at ARPE or any agency for that matter, certainly involve "decision making on issues where there is room for political disagreement on goals or their implementation." Huertas Morales, 278 F. Supp. 2d at 169; see also Jiménez Fuentes, 807 F.2d at 241-42 (framing the step-one inquiry in terms of whether the *position* at issue, rather than the entire agency, relates to "partisan political interests," such that it involves "government decision-making on issues where there is room for political disagreement on goals or their implementation"), Collazo Torres, 182 F.2d at 260

(same).  Typical human resources-related decisions, such as those regarding collective bargaining agreements or whether to downsize or restructure an agency's staff, are all matters upon which officials could disagree depending on their political affiliation or beliefs. Accordingly, any Human Resources Director position is one of "great responsibility and intense connection to the administration's goals." Huertas Morales, 278 F. Supp. 2d at 170.  Therefore, the functions of ARPE and AEP can be said to involve decisions which may engender differences of opinion based on politics, especially with respect to the functions of the Human Resources Departments of those agencies.

Moving to the second prong, then, it is also evident that the particular positions in question are ones that "resemble those of a policymaker," are "privy to confidential information," and involve other duties for which political affiliation or loyalty is an appropriate requirement.  In making this determination, the court examines the position's "relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." O'Connor, 994 F.2d at 910 (quoting Jiménez Fuentes, 807 F.2d at 242).  In so doing, the First Circuit "consider[s] the job description to be the best, and sometimes dispositive, source for determining the position's inherent functions." Roldán Plumey v. Cerezo Súarez, 115 F.3d 58, 62 (1st Cir. 1997).  According to the official job description, the Human Resources Director at ARPE "performs work of great complexity and responsibility in the direction, planning, coordination, supervision, and evaluation of the activities developed in the work sections or units comprising the Human Resources," and also "participates in the formulation and implementation of public policy regarding the administration of human resources in the agency." Dkt. No. 74-1, p. 1.  Similarly, the same position at AEP is

"in charge of the enactment and implementation of the labor management policy, as well as the planning, coordination, and supervision of the programs and activities that are developed in the Human Resources and Labor Affairs Office." Dkt. No. 74-1, p. 17-18. As described, both positions not only "resemble those of a policymaker" but actually make policy that affects the respective agencies' staff and also implement that policy. Both positions are the highest human resources authorities in their respective agencies, second only to the agency heads. Therefore, even when a program or policy is dictated by the head of the agency, it is the Human Resources Director who communicates that policy to the agency's staff and carries it out. See Jiménez Fuentes, 807 F.2d at 246 (quoting Branti v. Finkel, 445 U.S. 507, 530 (1980)) ("[P]olicy implementation is just as important as policymaking."). Moreover, both job descriptions indicate that they are responsible for advising and making recommendations to the respective agency heads regarding all personnel and labor-related matters, which are matters essential to the agencies' functioning. It is therefore unsurprising that political harmony between an agency head and its Human Resources Director is sought. Simply put, "[b]ecause the Director of Human Resources is one of the decision makers within ARPE, it is a position which could affect how policy is made and implemented within the agency." Velázquez, 550 F. Supp. 2d at 249; see also Huertas Morales, 278 F. Supp. 2d at 170 ("The Human Resources Director is one of the most influential executives in the administration of any business."). The inherent duties of both positions, then, are those resembling the functions of a high-level policymaker, as opposed to a mere clerk or technocrat. Compare Jiménez Fuentes, 807 F.2d at 244 (holding regional director of housing and urban development agency was policymaker), with Roldán Plumey, 115 F.3d at 63-64 (holding that Hearing Examiner with the Office of the Commissioner of Municipal Affairs was not policymaker because the duties "require technical and professional skills and do not

provide discretion to formulate or implement policy"), and Cordero v. de Jesús Méndez, 867 F.2d 1 (1st Cir. 1989) (holding that Internal Auditor of municipality is a "non-political technical" position; a "technocrat . . . and nothing more," because he only audits town financial records and makes a report to higher authorities, with "no authority to correct mistakes, only to point them out")

Plaintiff attempts to distinguish Velázquez and show that her duties resembled those of a technocrat and not a policymaker by arguing that Law 7 "stripped" her job of any discretion and "severely curtailed" her supervisory duties. Dkt. No. 80, pp. 10-11. This argument fails for two reasons: first, because Law 7 did not change her official job description, which is the proper point of reference for this analysis, and second because Law 7 did not, in fact, eliminate of plaintiff's policy-related duties.

Law 7, codified at 3 L.P.R.A. §§ 8791-8810, and also known as The Special Act to Declare a State of Fiscal Emergency and to Establish a Comprehensive Fiscal Stabilization Plan to Salvage the Credit of Puerto Rico, declares that Puerto Rico is in a state of fiscal crisis and aims to resolve this crisis by means of, *inter alia*, a three-phase plan to downsize the government payroll. See Statement of Motives, 2009 PR Laws 7, 2009 P.R. H.B. 1326 (Lexis Nexis 2011). Phase I provided for an optional 1-day reduction of the workweek for certain employees and incentives for voluntary early retirement. See 3 L.P.R.A. § 8794. Phase II set forth a layoff plan that included non-renewal of temporary employee contracts and termination of some permanent employees, and was to be implemented according to employee seniority. See 3 L.P.R.A. § 8799. Phase III temporarily suspended all laws, collective bargaining agreements, other types of agreements and other employment documents relating to a variety of listed personnel transactions. See 3 L.P.R.A. § 8802.

Plaintiff first points to Phase III, provides that, inter alia, certain provisions of employee classification plans are to be temporarily suspended. Id. at § 8802(a). She claims that the official job description that defendants submitted in support of their motion is a type of classification plan, and was therefore left without effect by Law 7. Dkt. No. 80, p. 10. The flaw in plaintiff's argument, however, is that said provision of Law 7 only suspended certain provisions of classification plans and other employment agreements, specifically, those that relate to certain listed personnel transactions, including promotions, demotions, relocations, transfers, retentions, layoffs, or reductions in force. 3 L.P.R.A. §§ 8802(a)(1)-(27). The list of suspended provisions does not include those relating to mere descriptions of job duties and functions. Accordingly, plaintiff's contention is without merit, and the official job descriptions remain relevant to this analysis.

Next, plaintiff contends that the same provision took away all of her discretion with respect to the listed personnel transactions, as did Phase II, the layoff plan. She thus contends that she was reduced to running the day-to-day operations of the Human Resources Office and to calculating and certifying employee seniority in connection with the Phase II layoff plan. First of all, the focus of the analysis here is on "the inherent powers and privileges of the position," not on the duties the employee has actually performed. Jiménez Fuentes, 807 F.2d at 242-43 (citing Tomczak, 765 F.2d at 640); see also Roldán Plumey, 115 F.3d at 62 (collecting cases) ("We have held time and again that a court, in making this determination, is to look only to the duties inherent to the position and is not to consider the actual functions of either past or present officeholders."). Even assuming *arguendo* that plaintiff's policy-related duties were severely curtailed by Law 7, the inherent duties of the position, as reflected in the job description, remain

unchanged.  In fact, because Law 7's measures were all temporary, plaintiff's duties would have eventually reverted back to normal had she remained in her position.[6]

Moreover, even if the court were to look at the actual duties plaintiff performed, and to assume that Law 7 limited them, it would only strengthen the conclusion that her job entailed important policy-related functions for which political affiliation was an appropriate requirement. As the First Circuit has emphasized, "policy implementation is just as important as policymaking." See Jiménez Fuentes, 807 F.2d at 246 (quoting Branti, 445 U.S. at 530).  Indeed, the two-prong test asks whether the plaintiff's duties "*resemble* those of a policymaker" not whether the plaintiff actually makes policy.  Implementation of a new law or policy can be one of the most important and sensitive functions of a high level official.  Even when the "procedures for carrying out [a given program] are strictly circumscribed, there is still opportunity for affecting . . . policies." Collazo Rivera, 812 F.2d at 262.  What is relevant is whether plaintiff's "duties offer considerable opportunity either to effectuate or to hinder the implementation of [the given] programs or policies." Id.  Here, the major relevant provisions of Law 7 pertain to human resources, the area over which plaintiff had the highest authority after Marrero at ARPE and after Méndez at AEP.  Plaintiff was thus charged with directing the implementation of this comprehensive new law for the entire agency staff—a task involving a high level of trust and responsibility.  Tasks of this kind are only undertaken by the types of high level trust employees contemplated by the political affiliation exception.  Of course, these are the types of undertakings that leave "room for political disagreement on goals or their implementation." Jiménez Fuentes, 807 F.2d at 214.  Plaintiff's own allegations illuminate this logic, as she claims that one source of the hostility between her and Marrero was their disagreement over how to implement Law 7.

---

[6] Phase III was to last two years, 3 L.P.R.A. § 8802, while Phase II was to end when the layoffs were complete.  3 L.P.R.A. § 8799.

14

Therefore, regardless of any discretion that Law 7 might have taken from plaintiff with respect to certain human resources transactions, it did not render her position that of a mere bureaucrat or technocrat who has no connection to the agency's policies or their implementation.

As a final note, the fact that plaintiff pleads intra-party political discrimination, rather than discrimination based on political party affiliation, does not alter the applicability of the policymaker exception here. First, it is well-settled that a claim for impermissible political discrimination may lie when the plaintiff and defendant belong to the same political party but belong to different factions within that party, or merely support different party leaders. See Padilla García v. Rodríguez, 212 F.3d 69, 76 (1st Cir. 2000) ("[F]actions within one party can represent different political philosophies. Thus the underlying principle, freedom to express political beliefs, is still very much at stake."); O'Connor v. Steeves, 994 F.2d 905, 909-10 (1st Cir. 1994) (analyzing political discrimination claim by municipal Superintendent of Public Works who claimed his discharge was due to his support of one fellow town council member over another). Yet courts, including the First Circuit, have found no principled distinction between political faction and party affiliation when finding that political affiliation is an appropriate requirement for a given position due to its policymaking and/or confidential nature. See O'Connor, 994 F.2d at 905-12; see also Busa v. Township of Gloucester, 458 Fed. Appx. 174 (3d Cir. 2012) (unpublished) (applying policymaker exception to Director of Public Works who alleged fellow Democratic party member fired him for his lack of participation and cooperation in party activities); Tomczak v. City of Chicago, 765 F.2d 633, 740 (7th Cir. 1985) (holding that political faction affiliation was appropriate criterion for second-highest position in city water department, because policymaker exception "applies with equal force to patronage dismissals when one faction of a party replaces another faction of the same party" as when one

party replaces another); Ecker v. Cohalan, 542 F. Supp. 896 (E.D.N.Y. 1982) (holding that political affiliation or its absence was appropriate requirement for county Deputy Parks Commissioner who alleged dismissal was due to his support of a different faction of Republican party in campaign for County Executive party nomination).

"Whether or not a position is subject to political discharge is a legal question for the courts." Rosenberg, 328 F.3d at 18 (citing Flynn v. City of Boston, 140 F.3d 42, 46 (1st Cir. 1998)). Having answered that question in the affirmative, and there being no dispute as to the inherent duties of plaintiff's positions, defendants are entitled to judgment as matter of law.

### B. Supplemental State Law Claims

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims that gave it original jurisdiction are dismissed. See 28 U.S.C. § 1367(c)(3); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). If all federal claims are dismissed prior to trial, then the state law claims should be dismissed as well. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). Because defendants are entitled to summary judgment on plaintiffs' only remaining federal claim, their state law claims shall also be dismissed.

### V. CONCLUSION

WHEREFORE, both motions for summary judgment, Dkt. Nos. 67 and 68, are GRANTED, such that plaintiffs' First Amendment claim is DISMISSED WITH PREJUDICE and all of their remaining state law claims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico this 17th day of August, 2012.

> s/Marcos E. López
> U.S. Magistrate Judge